UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LETA PENROD o.b.o <br> TOD ALAN PENROD, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting <br> Commissioner of Social Security, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL NO. 1:16cv324 <br> ) <br> ) <br> ) <br> ) <br> ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §416(i). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant last met the insured status requirements of the Social Security Act

2

       on June 30, 2013.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of April 14, 2012 through his date last insured of June 30, 2013 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: coronary artery disease; hypertension; degenerative disc disease; obesity; nephrolithiasis; and diabetes (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404 1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: the claimant could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. He could stand and/or walk for approximately 6 hours and sit for approximately 6 hours in an 8-hour workday with normal breaks and with the option to sit or stand alternatively at will, provided that he was not off-task more than 10% of the work period. The claimant retained the ability to perform tasks not requiring climbing of ropes, ladders and scaffolds but he could kneel, crouch, crawl, balance, stoop and climb ramps and stairs occasionally. The claimant could perform work activities that allowed him to avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, irritants such as fumes, odors, dust, gases and poor ventilation. He could perform tasks that involved no exposure to work-place hazards such as dangerous, moving machinery, unprotected heights and slippery/uneven surfaces. The claimant was limited to low stress work, defined as requiring only occasional decision making and involving only occasional changes in the work setting; however, he was capable of tolerating predictable changes in the work environment, making simple, work-related decisions and sustaining a flexible and goal-oriented pace.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January 26, 1965 and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured (Exhibit B1D)(20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English

(Exhibit B2E)(20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant was "not disabled," whether or not the claimant had transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 3).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 14, 2012, the alleged onset date, through June 30, 2013, the date last insured (20 CFR 404.1520(g)).

(Tr. 23-33)

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on March 14, 2017. On June 19, 2017, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on July 7, 2017. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific

4

>impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

A procedural note is in order here.  Plaintiff filed his initial disability application on September 23, 2010.  This application was denied at the administrative level and also by an ALJ decision dated April 11, 2012.  This decision was not appealed. On March 12, 2013, Plaintiff filed a second application for disability benefits.  This application was also denied at the administrative level and also by an ALJ decision dated March 26, 2015.  It is the second decision that is currently before this court.  Plaintiff died on February 19, 2015, and his wife substituted on his behalf.

In support of remand or reversal, Plaintiff first argues that the ALJ failed to logically account for changes since the last unfavorable ALJ opinion.  Plaintiff notes that the second ALJ opinion added two impairments that it identified as "severe" that were not identified as "severe" in the prior ALJ opinion: degenerative disc disease and diabetes.  Yet in the second ALJ opinion the RFC requires 2 additional hours daily of standing, no longer a limit of 20 minutes standing at a time, no additional 3-5 minute breaks, and the ability to withstand greater exposure to extreme cold, extreme heat, and humidity.  Plaintiff claims that the ALJ did not identify any substantial improvement in Plaintiff's condition to support the increased RFC.

5

Defendant argues that the ALJ's second decision stands alone and comparison to the prior ALJ's decision is not appropriate. Defendant further argues that the ALJ's RFC finding (in the second decision, which is at issue here) was supported by substantial evidence.  While it is true that an ALJ must build an accurate and logical bridge from the evidence to the conclusion, there is no authority for the proposition that a second ALJ must build a logical bridge from a prior ALJ decision.  In the present case, the two decisions encompassed different time frames and different medical evidence.  Therefore, this court agrees with the Commissioner that it would be improper to compare the latter ALJ decision with the earlier ALJ decision.

Next, Plaintiff alleges errors by the ALJ's failure to consider chest pain that radiated into his jaw and left arm, the effects of his obesity, and his kidney condition.   It is well settled that an ALJ is not required to address every piece of evidence in the record. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) ("The ALJ is not required to address every piece of evidence or testimony presented . . . "); *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009) ("[T]he ALJ is not required to discuss every piece of evidence but is instead required to build a logical bridge from the evidence to [his] conclusions."). Thus, it is not reversible error that the ALJ did not specifically discuss the evidence Plaintiff cites.

More importantly, Plaintiff fails to show how the evidence he cites showed greater limitations than those included in the ALJ's RFC finding. Plaintiff cites treatment notes from January 2012, which was before the relevant period in this case, and these notes showed that cardiologist David Schleinkofer, M.D., noted that Plaintiff was "doing well from a cardiovascular standpoint" (Tr. 477-78). Plaintiff also cites treatment notes from April, and November 2012, which showed that Plaintiff was diagnosed with hypertension and coronary artery disease

6

—impairments that the ALJ found were severe (Tr. 315-18). Plaintiff then cites records showing that, on two occasions, emergency room physician Thomas Huntington, M.D., examined Plaintiff with unremarkable results, including a normal EKG, and a clear chest x-ray (Tr. 364-67, 374, 398-400). Finally, Plaintiff cites evidence from August 2014—more than a year after Plaintiff's date last insured (Tr. 578-87).

Additionally, Plaintiff's arguments related to his obesity and kidney conditions lack record citations. Plaintiff suggests that these impairments caused more limitations than the ALJ found, but Plaintiff does not cite any specific evidence in support. Thus, Plaintiff has failed to show that the ALJ erred in considering these impairments. *See* 20 C.F.R. § 404.1512 (claimant's burden to prove disabling impairments); *see also Collins v. Barnhart*, 114 F. App'x 229, 234 (7th Cir. 2004) ("[T]he existence of these conditions alone does not prove that the conditions so functionally limited [claimant] as to rendered her completely disabled during the relevant period.").

Plaintiff next contends that the ALJ erred with regard to the opinions of treating cardiologist Dr. Schleinkofer and emergency room physician Dr. Huntington. According to Plaintiff, these doctors opined that Plaintiff "was on death's door" (Pl. Br. 24). However, as discussed above, Dr. Schleinkofer noted that—far from "death's door"—Plaintiff was "doing well from a cardiovascular standpoint" (Tr. 477-78). Emergency room notes also indicated that Dr. Huntington's exams were unremarkable (Tr. 364-67, 397). Additionally, the evidence from Drs. Schleinkofer and Huntington do not constitute a medical opinion regarding Plaintiff's work-related limitations. *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the

7

nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").

Next, Plaintiff argues that the ALJ improperly evaluated the opinion of consultative physician Vijay Kamineni, M.D., by discussing portions that supported a finding of non-disability and ignoring portions that suggested disability. However, a review of the record shows that the ALJ accurately summarized all of Dr. Kamineni's opinion (Tr. 31-32, 491). The ALJ reasonably gave significant weight to Dr. Kamineni's opinion that Plaintiff had normal fine motor skills, concentration, and social skills because those findings were based on the doctor's own observations (Tr. 31-32, 491). The ALJ also reasonably gave no significant weight to Dr. Kamineni's opinion related to Plaintiff's ability to lift, stand and walk because those findings were based on Plaintiff's subjective reports and not supported by substantial evidence (Tr. 32, 491 ("The patient states he can sit for 30 minutes some times which is contingent on the pain in his hips. He states he [sic] for 30 minutes some times and it is also contingent on the severity of his hip and leg pain . . .")). *See Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) ("There is no presumption of truthfulness for a claimant's subjective complaints; rather, an ALJ should rely on medical opinions based on objective observations and not solely on a claimant's subjective assertions") (*citing Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)).

Plaintiff contends that the ALJ substituted her own opinion for that of the consultative physician because Dr. Kamineni observed "audible noises" in Plaintiff's shoulders and knees, and because Dr. Kamineni requested x-rays (Pl. Br. 22, Tr. 491)(joint crepitus in shoulders and knees; request for x-rays of hips, shoulders, and neck). Those observations and the request for further testing, however, did not constitute a medical opinion regarding Plaintiff's limitations. *See* 20

8

C.F.R. § 404.1527(a)(2). The ALJ properly considered the portion of Dr. Kamineni's notes that constituted the medical opinion (Tr. 31-32, 491). Plaintiff fails to show how the ALJ "played doctor" by explaining that the evidence did not support part of Dr. Kamineni's opinion, which the doctor himself admitted was based on Plaintiff's own statements. Thus, Plaintiff's argument that the ALJ impermissibly "played doctor" with regard to Dr. Kamineni's opinion is baseless. *See Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001) ("The cases in which we have reversed because an ALJ impermissibly 'played doctor' are ones in which the ALJ failed to address relevant evidence.").

Next, Plaintiff argues that the ALJ "played doctor" in giving no significant weight to the opinion of consultative psychologist Amanda Mayle, Ph.D. The ALJ noted that Dr. Mayle examined Plaintiff in July 2013, after Plaintiff's date last insured (Tr. 32, 493). The ALJ further noted that Dr. Mayle diagnosed Plaintiff with generalized anxiety disorder and panic disorder, and assessed a Global Assessment of Functioning (GAF) score of 50, which suggested serious symptoms (Tr. 32, 496). The ALJ reasonably determined that the treatment records before Plaintiff's date last insured in June 2013 did not support severe mental limitations (Tr. 32). Without specifically citing the GAF score of 50, Plaintiff asserts that the ALJ erred in giving no significant weight to Dr. Mayle's finding of serious symptoms. However, the Seventh Circuit has explained, "GAF scores . . . are 'useful for planning treatment,' and are measures of both severity of symptoms and functional level. Because the 'final GAF rating always reflects the worse of the two,' the score does not reflect the clinician's opinion of functional capacity. Accordingly, 'nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score.'" *Denton v. Astrue*, 596 F.3d 419, 425

9

(7th Cir. 2010) (citations omitted). Plaintiff also cites evidence of Plaintiff's prescriptions for Celexa in July and August 2013—after Plaintiff's date last insured. However, this evidence does not undermine the ALJ's determination that the evidence on or before June 2013 did not support severe mental limitations.

Plaintiff contends that the ALJ erred in her consideration of "virtually every prong of the credibility assessment" (Pl. Br. 19). Plaintiff's contention is not supported by the evidence. The fact that Plaintiff's impairments could conceivably cause greater limitations than those included in the RFC assessed by the ALJ, did not mean that those impairments actually caused greater limitations. *See Schmidt v. Barnhart*, 395 F.3d 737, 745-46 (7th Cir. 2005). The ALJ credited Plaintiff's claims of pain and fatigue but found that his allegations of total disability were not supported by the evidence (Tr. 28, 30-31).

Plaintiff asserts that his daily activities did not have any direct correlation to work (Pl. Br. 19). However, the ALJ did not equate Plaintiff's activities to full-time work activities. *See Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013). Rather, the ALJ found that the pre-date-last-insured activities were consistent with the RFC in this case (Tr. 31). *See* 20 C.F.R. § 404.1529(c)(3)(i). Plaintiff fails to distinguish between the pre- and post-date-last-insured evidence regarding daily activities. As the ALJ acknowledged, at the time of the hearing in March 2015, Plaintiff was more limited in his daily activities, but this did not satisfy Plaintiff's burden of showing disability before the date last insured. *See* 20 C.F.R. § 404.1512(a).

Next, Plaintiff argues that the ALJ improperly found that his noncompliance with treatment was the norm and compliance was the exception. The ALJ noted two records from April and November 2012 when Plaintiff declined a test and stated that he took his medications

10

only intermittently due to lack of health insurance and financial difficulties (Tr. 30, 473, 640). However, the ALJ did not find that Plaintiff was more noncompliant than compliant with treatment. The ALJ's consideration of the evidence of noncompliance with treatment, therefore, fully complied with the regulations in place at the time of the decision. *See* Social Security Ruling 96-7p, 1996 WL 374186 ("the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment").

Plaintiff also objects to the ALJ's consideration of Plaintiff's smoking. Plaintiff incorrectly claims that the ALJ failed to consider that smoking was a symptom of Plaintiff's impairments. The ALJ specifically noted that Plaintiff told cardiologist Charles Presti, M.D., that he would have difficulty quitting smoking due to increased stress (Tr. 30, 473). Plaintiff fails to mention the fact that Dr. Presti nonetheless recommended smoking cessation for Plaintiff's overall health (Tr. 30, 473). The ALJ did not err in noting Dr. Presti's treatment notes regarding Plaintiff's continued smoking.

Finally, Plaintiff argues that the ALJ's credibility determination was erroneous because she did not consider Plaintiff's good work history. The Seventh Circuit has held that "work history is just one factor among many, and it is not dispositive . . . [an] ALJ's silence is not enough to negate the substantial evidence supporting the adverse credibility finding." *Loveless v. Colvin,* 810 F.3d 502, 508 (7th Cir. 2016) (citing *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998)). Because Plaintiff has not shown that the ALJ committed reversible error in evaluating

11

Plaintiff's subjective complaints, the ALJ's credibility determination should stand. *See Kittelson v. Astrue*, No. 09-2281, 2010 WL 271726, at *4 (7th Cir. Jan. 25, 2010) ("The ALJ's adverse credibility finding was not perfect. But it was also not 'patently wrong.'").

Accordingly, for all the reasons detailed above, the decision of the ALJ will be affirmed.

## Conclusion

On the basis of the foregoing, the ALJ's decision is hereby AFFIRMED.

Entered: July 25, 2017.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court